IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| MONIQUE ROBINSON,<br>    Petitioner,<br><br>    v.<br><br>SUPERINTENDENT<br>LONNIE OLIVER, *et al.*,<br>    Respondents. | :<br>:<br>:<br>:<br>:   Civ. No. 19-4771<br>:<br>:<br>:<br>: |

**O R D E R**

Petitioner Monique Robinson has filed counseled Objections to Magistrate Judge Strawbridge's Recommendation that I deny her Amended § 2254 Petition. (Doc. Nos. 6, 15, 16); 28 U.S.C. § 2254. I will overrule the Objections, adopt Magistrate Judge Strawbridge's Report and Recommendation, and deny relief.

**I.    BACKGROUND**

Around midnight on September 14, 2011, Saleem Williams, Stephan Reidler, and Robinson—out on a "mission" to rob someone—approached Selvin Lopez, beat him, robbed him of his backpack, and fled. (Doc. No. 15 at 2 (quoting Op. Pursuant to Pa. R.A.P. 1925(b) at 1-2, Commonwealth v. Robinson, No. CP-15-CR-157-2012 (Sept. 30, 2013).) When Lopez attempted to fight back, Williams shot him once in the stomach. (Id.) Lopez's uncle, Estuardo Lopez-Mauricio, witnessed his nephew's murder. (Id. at 3.)

Williams, Reidler, and Robinson were charged with Lopez's murder. (Id. at 2.) Williams and Reidler entered negotiated guilty pleas. (Id.) Robinson refused the plea offer and went to trial, against her counsel's advice. (Id.)

1

### A. Trial and Sentencing

In April 2013, the Chester County jury convicted Robinson of second-degree murder, aggravated assault, robbery, conspiracy, theft, flight to avoid apprehension, and a weapons offense. (Doc. No. 6 at 5; Doc. No. 9 at 14; Doc. No. 15 at 2-3.) In July 2013, a trial Judge sentenced Robinson to a mandatory life sentence for the murder conviction, plus 106-408 consecutive months' imprisonment on the other charges. (Doc. No. 15 at 3; Doc. No. 6 at 5; Doc. No. 9 at 15.)

At trial, Robinson's co-conspirators testified—pursuant to their plea agreements—about her role in the killing. (Doc. No. 15 at 1.)

Reidler testified that he pled guilty to third-degree murder and conspiracy to commit armed robbery. (Doc. No. 15 at 15.) He acknowledged that he lied to avoid imprisonment by giving a false name at the time of his arrest, but said he would not lie to reduce his period of imprisonment. (Id. at 15-16.) Although he called Robinson a "bitch" in his police statement, and blamed her for taking 20 years of his life, Reidler testified that he was not seeking retribution against her. (Id. at 16.) He told the jury about the Commonwealth's two-part plea offer, which he accepted: (1) a sentence of 20 to 40 years' imprisonment for third-degree murder and conspiracy to commit armed robbery; and (2) an open guilty plea to the lead charge in a separate burglary case. (Id.)

Williams testified that he pled guilty to third-degree murder, conspiracy to commit armed robbery, weapon and drug offenses, and escape for attempting to escape from the Chester County prison, for which he received a consolidated total sentence of 40 to 80 years' imprisonment. (Id. at 16-17.) He told the jury that his plea agreement—offered to him *after* Reidler pled guilty—was contingent upon his testifying truthfully. (Id. at 17.)

## B. Direct Appeal and Collateral Relief

In 2014, the Superior Court dismissed Robinson's direct appeal and the Supreme Court denied *allocatur*. (Doc. No. 15 at 4-5; Doc. No. 6 at 6; Doc. No. 9 at 15.)

In 2015, Robinson timely filed a counseled collateral relief petition under the Post-Conviction Relief Act. 42 Pa. Cons. Stat. §§ 9541-46; (Doc. No. 15 at 5; Doc. No. 6 at 6; Doc. No. 9 at 15.)

After a May 2016 hearing, the PCRA Court denied Robinson's petition in January 2017. (Doc. No. 15 at 5-6.) Robinson filed a counseled appeal, and the Superior Court affirmed. (Id.) The Supreme Court declined further review. (Id.)

In October 2019 Robinson filed a counseled habeas petition, which she amended in February 2020 and supplemented in May 2022. (Id. at 6; Doc. No. 6; Doc. No. 14); 28 U.S.C. § 2254. She raises the following grounds for relief:

(1) The Commonwealth committed prosecutorial misconduct, in violation of the Due Process Clause of the Fourteenth Amendment, by knowingly presenting false testimony and failing to correct it;
(2) Trial counsel provided ineffective assistance, in violation of the Sixth Amendment, by failing to impeach Williams and Reidler regarding the deals they struck with the Government; and
(3) Trial counsel was ineffective for failing to object to the prosecutor's vouching for witnesses Williams and Reidler.

(Doc. No. 15 at 6-7, 11-12, 29, 31, 33, 36.)

Judge Jones—to whom this matter was previously assigned—referred it to Magistrate Judge Perkin for a Report and Recommendation in November 2019. (Doc. No. 4.) In September 2021, the Clerk of Court reassigned the matter to Magistrate Judge Strawbridge. (Doc. No. 12.) Respondents oppose relief and Magistrate Judge Strawbridge recommends denying the Petition. (Doc. Nos. 9, 15.) Robinson filed Objections to the Report, and Respondents filed a response.

3

(Doc. Nos. 16, 18.) In November 2022, the matter was reassigned to me. (Doc. No. 19.)

## II. LEGAL STANDARDS

I must review *de novo* those portions of the Report to which Robinson files timely, specific objections. 28 U.S.C. § 636(b)(1)(C). I may "accept, reject, or modify, in whole or in part" Magistrate Judge Strawbridge's findings or recommendations. Id.; Brophy v. Halter, 153 F. Supp. 2d 667, 669 (E.D. Pa. 2001). As to those portions to which no objections have been made, I must "satisfy [myself] that there is no clear error on the face of the record in order to accept the recommendation." Fed. R. Civ. P. 72(b) Advisory Committee Note to the 1983 Amendment; see Henderson v. Carlson, 812 F.2d 874, 878 (3d Cir. 1987) (explaining the Court's responsibility "to afford some level of review" when no objections have been made).

Before seeking federal habeas relief, state prisoners must exhaust their state court remedies. 28 U.S.C. § 2254(b). Moreover, federal courts usually will not review habeas claims that were not presented to the state court in the manner prescribed by its procedural rules. Wainwright v. Sykes, 433 U.S. 72, 81-82 (1977). "[I]f it is clear that [the habeas petitioner's] claims [would] now [be] procedurally barred under [state] law," the claims are exhausted but procedurally defaulted. Gray v. Netherland, 518 U.S. 152, 161-62 (1996) (second and fifth alterations in original). I may not consider a defaulted claim unless the petitioner shows either: (1) cause and prejudice; or (2) that the failure to consider the claim would result in a fundamental miscarriage of justice. Coleman v. Thompson, 501 U.S. 722, 750 (1991); Cristin v. Brennan, 281 F.3d 404, 409 n.5 (3d Cir. 2002), cert. denied, Cristin v. Wolfe, 527 U.S. 897 (2002); see Murray v. Carrier, 477 U.S. 478, 488 (1986) ("[A] showing that the factual or legal basis for a claim was not reasonably available to counsel, or that some interference by officials made compliance impracticable, would constitute cause." (internal quotations and citations omitted)).

4

I may grant habeas relief only if the state court's adjudication of the petitioner's claim "resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States" or "resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding." 28 U.S.C. § 2254(d). To warrant habeas relief, the state court's decision must be "objectively unreasonable." Jacobs v. Horn, 395 F.3d 92, 100, 106 (3d Cir. 2005). I may not grant relief "merely because [I] conclude[] that the state court applied federal law erroneously or incorrectly." Id. at 100; see also Cavazos v. Smith, 132 S. Ct. 2, 4 (2011) ("[A] federal court may not overturn a state court decision . . . simply because the federal court disagrees with the state court."). I must give determinations by the Superior Court considerable deference; I presume factual issues determined by a state court are correct unless a petitioner rebuts this presumption by clear and convincing evidence. Werts v. Vaughn, 228 F.3d 178, 196 (3d Cir. 2000); see also Sneed v. Beard, 328 F. Supp. 3d 412, 422 (E.D. Pa. 2018) (petitioners face a "high hurdle in challenging the factual basis for a prior state-court decision rejecting a claim").

### III.   OBJECTIONS

Magistrate Judge Strawbridge found Robinson's first claim "defaulted and unreviewable as a whole." (Doc. No. 15 at 24.) He then rejected her second and third claims, finding that the state courts neither unreasonably applied nor contradicted Strickland v. Washington, and that their factual findings were reasonable. (Id. at 37, 47); 466 U.S. 668 (1984).

Accordingly, Magistrate Judge Strawbridge recommends that I deny Robinson's Petition and decline to issue a Certificate of Appealability. (Doc. No. 15 at 2.)

**A.      Objection One (Claim I): the Commonwealth's alleged failure to correct false testimony in violation of Napue v. Illinois**

Robinson argues that Judge Strawbridge erred by: (1) analyzing her claim under Brady v. Maryland, 373 U.S. 83 (1963), and Giglio v. United States, 405 U.S. 150 (1972), instead of Napue v. Illinois, 360 U.S. 264 (1959); (2) finding that the Commonwealth's disclosure of evidence undercut Robinson's argument that cause existed to excuse her default; and (3) concluding that the alleged misconduct was not material.  (Doc. No. 16 at 1-5.)

Although Robinson's first claim is procedurally defaulted—she did not present it to the state courts—the default analysis requires some examination of the merits.  (Doc. No. 15 at 7, 15.)  I will thus first discuss Napue and Brady as to each of her four subclaims.

   *1.      Analysis under Napue and Brady*

When the prosecutor knowingly presents or fails to correct false testimony, it violates not only due process but Napue and Brady as well.  Haskell v. Superintendent Greene SCI, 866 F.3d 139, 145-46, 148-49 (3d Cir. 2017).  Under Giglio, "the government must disclose materials that go to the question of guilt or innocence as well as materials that might affect the jury's judgment of the credibility of a crucial prosecution witness."  United States v. Friedman, 658 F.3d 342, 357 (3d Cir. 2011) (quoting United States v. Milan, 304 F.3d 273, 287 (3d Cir. 2002)).

To establish a Napue violation, Robinson must show that: (1) the challenged witness committed perjury; (2) the prosecution knew or should have known of his perjury; (3) the false testimony went uncorrected; and (4) the testimony was material—i.e., that there is any reasonable likelihood that the false testimony could have affected the verdict.  Steele v. Beard, 830 F. Supp. 2d 49, 75 (W.D. Pa. 2011); Lambert v. Blackwell, 387 F.3d 210, 249 (3d Cir. 2004) ("Discrepancy is not enough to prove perjury.").

6

To establish a Brady violation, Robinson must show that: (1) the evidence at issue is favorable to her, because it is exculpatory or impeaching; (2) the evidence was suppressed by the State; and (3) prejudice ensued. Strickler v. Greene, 527 U.S. 263, 281-82 (1999); Breakiron v. Horn, 642 F.3d 126, 133 (3d Cir. 2011); see also United States v. Agurs, 427 U.S. 97, 103 (1976) ("The rule of Brady . . . applies . . . [to] information which had been known to the prosecution but unknown to the defense."). To establish prejudice, Robinson must show the evidence in question is material—i.e., that "there is a reasonable probability that, had the evidence been disclosed to the defense, the result of the proceeding would have been different." United States v. Bagley, 473 U.S. 667, 682 (1985).

   a. *Reidler's claim to have consistently implicated Robinson*

Robinson argues that the prosecutor allowed Reidler to testify falsely that he "consistently implicated Robinson" in the robbery-murder, which was untrue because "in Reidler's first statement to police, he specifically denied that Robinson was involved at all." (Doc. No. 15 at 18 (citing Doc. No. 6 at 17-18).) Robinson's counsel knew the details of Reidler's police statement at trial, however, and the jury heard Reidler correct himself when he admitted that he initially lied to police, insisting neither he nor Robinson was involved before admitting that they were. (Id.)

Because Reidler's testimony did not go uncorrected, and because the details of Reidler's statement to police were not suppressed, Robinson cannot establish a Napue or Brady violation. See Steele, 830 F. Supp. 2d at 75; Strickler, 527 U.S. at 281-82; Street v. Warden, Md. Penitentiary, 423 F. Supp. 611, 614 (D. Md.) (prosecution did not allow false testimony to go uncorrected because the alleged perjury was immediately corrected by further cross examination), aff'd, 549 F.2d 799 (4th Cir. 1976), cert. denied, 431 U.S. 906 (1977).

> b. *Reidler's denial that his testimony was offered as a part of his deal with the Commonwealth*

Reidler initially testified that he agreed to plead guilty because "a person lost their life over 60 bucks," and "it felt like the right thing to do," denying he had "been offered anything." (Doc. No. 15 at 19.) The jury later heard him explain that he "got an offer, and it had nothing to do with [his] testimony." (Id.) On re-cross-examination, Reidler testified that the offer *did* have something to do with his testimony, however. (Id.) Robinson's trial counsel had access to Reidler's guilty plea colloquy, the transcript of his guilty plea hearing, and copies of both witnesses' plea agreements. (Id. at 20, 22-24.)

Because Reidler's testimony did not go uncorrected, and because the details of his negotiated plea were known to Robinson's trial counsel (i.e., not suppressed), Robinson cannot establish a Napue or Brady violation. See Steele, 830 F. Supp. 2d at 75; Strickler, 527 U.S. at 281-82; Street, 423 F. Supp. at 614.

> c. *Reidler's testimony that his unrelated burglary case was not part of his deal*

Although Reidler initially testified that the Commonwealth had not promised him anything in connection with his pending burglary charge, during cross-examination he admitted that his open guilty plea to burglary was an integral part of the negotiated plea deal. (Doc. No. 15 at 21.) He also acknowledged that, after Robinson's trial, he could be sentenced to 10 to 20 years in the burglary case. (Id.)

Once again, because Reidler's testimony did not go uncorrected, and because the terms of his negotiated plea were not suppressed, Robinson cannot establish a Napue or Brady violation. See Steele, 830 F. Supp. 2d at 75; Strickler, 527 U.S. at 281-82; Street, 423 F. Supp. at 614.

   *d.  The prosecutor's statement that Reidler and Williams had no motive to lie*

Robinson mischaracterizes the Commonwealth's closing argument by alleging that the prosecutor improperly argued that neither Reidler nor Williams had a deal or a motive to lie. (Doc. No. 15 at 23.) In fact, the prosecutor stated that there was no deal *before* the witnesses provided their accounts, and they thus were not motivated by a deal when they confessed. (Id.; Doc. No. 18 at 3.) Robinson also alleges that the prosecutor suppressed that he had committed to Reidler and Williams, pursuant to their plea agreements, that he would notify the Parole Board of their cooperation when they became eligible for parole, giving them a motive to testify. (Doc. No. 15 at 23.) Robinson's counsel had access to their plea agreements, however. (Id. at 24.)

Robinson has not shown suppression or perjury and thus cannot establish a Brady or Napue violation. See Steele, 830 F. Supp. 2d at 75; Strickler, 527 U.S. at 281-82.

Because Robinson's Napue and Brady claims fail on other grounds, I will not address materiality.

   2.  *Procedural Default*

Magistrate Judge Strawbridge found that Robinson failed to demonstrate cause and prejudice to excuse the default. (Doc. No. 15 at 14.) Robinson urges that Magistrate Judge Strawbridge "failed to consider" that "the Commonwealth's misconduct constituted cause to excuse Robinson's default." (Doc. No. 16 at 5.)

To show cause, Robinson argues that "the Commonwealth concealed . . . facts that its witnesses perjured themselves about the benefits they had received in exchange for their cooperation" and that "these facts were not reasonably available to prior counsel." (Doc. No. 14 at 4.) As I have discussed, the prosecution did not suppress or "conceal" the details of the

9

witnesses' negotiated plea agreements. Robinson's trial counsel had access to Reidler's guilty plea colloquy, the transcript of his guilty plea hearing, and copies of both witnesses' plea agreements. (Doc. No. 15 at 20, 23-24.) Robinson has failed to show that the basis for her claim was not reasonably available to counsel. She thus cannot show cause to excuse the default. Murray, 477 U.S. at 488.

Accordingly, Robinson's first claim is defaulted and unreviewable. (Doc. No. 15 at 24.) I will thus overrule Robinson's objection as to Claim I.

### B.   Objection Two (Claim II): Alleged ineffective assistance of counsel for failing to properly impeach

Robinson argues that Magistrate Judge Strawbridge erred by: (1) failing to consider certain arguments made by Robinson pursuant to § 2254(d); and (2) finding *sua sponte* that another argument made by Robinson was defaulted. (Doc. No. 16 at 6-7.)

#### 1.   *Robinson's § 2254(d) arguments*

Robinson argues that the Magistrate Judge "erred in failing to consider the arguments [she] made [on pages 62 to 71 of her Amended Petition] to show that the state court decision denying relief was both contrary to clearly established federal law and an unreasonable determination of the facts." (Doc. No. 16 at 6-7); 28 U.S.C. § 2254(d). She is mistaken. Magistrate Judge Strawbridge explicitly applied the standard set forth in § 2254(d) to each of the four subparts of this claim, and considered Robinson's arguments at pages 62 to 71 of her Amended Petition. (Doc. No. 15 at 29-31, 33, 36-37 ("[T]he state courts neither unreasonably applied nor contradicted Strickland in finding that counsel was not ineffective, and . . . their factual findings were fully reasonable . . . .").)

10

To the extent Robinson attempts to restate arguments presented to and considered by the Magistrate Judge, such an argument is "not entitled to *de novo* review." Long v. Pa. Bd. Probation & Parole, No. 14-4171, 2017 WL 3412629, at *2 (E.D. Pa. Aug. 9, 2017). I find no clear error in the Magistrate Judge's conclusion. Id. Accordingly, I will overrule this objection.

### 2. *Procedural Default*

Robinson also alleges that trial counsel was ineffective for failing to elicit that the prosecutor had committed to Reidler and Williams that, pursuant to their plea agreements, he would notify the Parole Board of their cooperation when they reached parole eligibility. (Doc. No. 15 at 36.) Robinson never presented this ineffectiveness allegation to the state courts, however. (Id. at 37.) The PCRA's jurisdictional one-year statute of limitations: (1) bars Robinson from returning to state court to exhaust this new subclaim, and (2) provides an adequate and independent state ground precluding federal habeas review. 42 Pa. Cons. Stat. § 9545(b)(1); Whitney v. Horn, 280 F.3d 240, 251 (3d Cir. 2002). Judge Strawbridge thus concluded that relief is not available on this subclaim. (Doc. No. 15 at 37.) Robinson argues that the Magistrate Judge erred because the Commonwealth did not raise an exhaustion defense. (Doc. No. 16 at 7; Doc. No. 18 at 9-10.)

The Court may raise the issue of procedural default *sua sponte*, so long as Robinson is given fair notice and opportunity to respond and is not prejudiced. Evans v. Sec'y Pa. Dep't of Corr., 645 F.3d 650, 656 n.12 (3d Cir. 2011); Day v. McDonough, 547 U.S. 198, 209-10 (2006); Sweger v. Chesney, 294 F.3d 506, 520-21 (3d Cir. 2002), cert. denied, 538 U.S. 1002 (2003); Whitacre v. Lamas, No. 13-1286, 2016 WL 3671529, at *1 (W.D. Pa. July 11, 2016). "The Report and Recommendation gave [Robinson] the required notice and [s]he had an opportunity to respond to the issue of procedural default in Objections." Whitacre, 2016 WL 3671529, at *1. The record establishes that: (1) Robinson received fair notice of the potential consideration of the procedural

default doctrine; (2) she had an opportunity to respond by her Objections to the Report and Recommendation; and (3) she is not prejudiced by the Court's invocation of the doctrine. See id.

Because Robinson has not demonstrated cause and prejudice to excuse her default, relief is not available on this subclaim. Coleman, 501 U.S. at 750; (Doc. No. 15 at 37; Doc. No. 16 at 7.) I will thus overrule this objection.

### C. Objection Three (Claim III): Ineffective assistance of counsel for failing to object to improper vouching

Robinson argues that Judge Strawbridge failed to consider Robinson's arguments on pages 88 to 89 of her Amended Petition "that the state court's reasoning in denying relief was an objectively unreasonable application of controlling federal law . . . and determination of the facts" under 28 U.S.C. § 2254(d). (Doc. No. 16 at 8.) Once again, she is mistaken. Judge Strawbridge found that the state courts' adjudication of Robinson's Sixth Amendment claim was *not* an unreasonable application of Strickland and considered Robinson's arguments at pages 71 to 91 of her Amended Petition. (Doc. No. 15 at 44, 47 ("[I]t [is] clear that any error on counsel's part in not objecting could not have constituted Strickland prejudice.").)

Once again, to the extent Robinson attempts to rehash the arguments made in her other habeas filings, such an argument is "not entitled to *de novo* review." Long, 2017 WL 3412629, at *2. There is no clear error in the Magistrate Judge's conclusion. Id. Accordingly, I will overrule this objection.

### IV. CONCLUSION

**AND NOW**, this 15th day of May, 2023, upon consideration of the pleadings and record herein, and after careful review of Magistrate Judge Strawbridge's Report and Recommendation (Doc. No. 15), Petitioner's Objections (Doc. No. 16), Respondents' Response (Doc. No. 18), and

all related filings, it is hereby **ORDERED** that:

1. The Amended Petition Under 28 U.S.C. § 2254 for Writ of Habeas Corpus by a Person in State Custody (Doc. No. 6) is **DENIED with prejudice**;

2. Petitioner's Objections to the Report and Recommendation (Doc. No. 16) are **OVERRULED**;

3. Magistrate Judge Strawbridge's Report and Recommendation (Doc. No. 15) is **APPROVED** and **ADOPTED**; and

4. The Clerk of Court shall mark this case **CLOSED** for statistical purposes.

**AND IT IS SO ORDERED**.

*/s/ Paul S. Diamond*

Paul S. Diamond, J.